IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 DEC 28 PM 3:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 28 2001

| | |
|---|---|
| MORRIS E. SHELKOFSKY, JR., JOY L. SHELKOFSKY, and DANIEL G. SHELKOFSKY, by his father, Morris Shelkofsky, Jr., <br><br> Plaintiffs, <br><br> vs. <br><br> KAREN H. SANDERS, FRED W. SANDERS, JOHN L. WOFFORD, JR., OKOLONA TRUCK LEASING, INC., CHRISTOPHER L. BATES, LUISA BATES, JAMES A. BATES, and UNITED SERVICES AUTOMOBILE ASSOCIATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 99-AR-1134-S ) ) ) ) ) ) ) ) ) ) |

**MEMORANDUM OF OPINION**

In this action, a chain-reaction of events resulted in three separate collisions involving four motor vehicles: the plaintiffs' Volvo; the Sanders defendants' Explorer; defendant Okolona Truck Leasing, Inc.'s tractor-trailer (the truck), whose driver was defendant Wofford; and defendant Bates' Probe. Also present on the road was a Tahoe, occupied by Billy and Caprice Colburn.

The Probe hit and bounced off the truck, which was idling several feet off Highway 82 in front of a convenience store, waiting to re-enter the highway. The Probe then hit the Sanders' Explorer, which was driven by Mrs. Sanders; Mr. Sanders was in the front passenger's seat. The Explorer then entered the downsloping, grassy median which separated the four lanes of Highway 82, flipped over, and proceeded to hit Morris E. Shelkofsky's Volvo, which he was driving west on Highway 82. In addition to claims for damage to the Volvo and injuries to its only occupant, Morris Shelkofsky, the complaint presents loss-of-services claims for Morris' wife, Joy, and their son, Daniel.[1]

The plaintiffs' claims against the Bates defendants have been settled and they are no longer parties to this action.[2] Joy Shelkofsky is due to be dismissed from this action, based upon her statement that she does not want Morris Shelkofsky, now her former husband, to represent her and she relinquishes any and all claims she might have arising out of the events in question.

Before the court are the plaintiffs' motion for summary judgment on all affirmative defenses (ct. doc. 32); defendants Okolona Truck Leasing and Wofford's motion for summary judgment (ct. doc. 33); the Sanders defendants' motion for summary judgment

---

[1] Mr. Shelkofsky, an attorney licensed in Florida, was admitted pro hac vice to represent his wife and son, as well as himself.

[2] The claims against United Services Automobile Association have been dismissed.

(ct. doc. 34); Sanders' motion to strike the August 19, 2001 report of the plaintiffs' expert (ct. doc. 54); and Okolona and Wofford's joining in Sanders' motion to strike plaintiff's expert's report of August 19, 2001 (ct. doc. 55).

The motions have been thoroughly argued in the parties' written submissions and at oral argument held on November 30, 2001.[3] The summary judgment evidence consists of the depositional testimony of Karen and Fred Sanders, Billy and Caprice Colburn, John L. Wofford, Jr., and the plaintiffs' reconstruction expert, Jack Sparks, and certain of the plaintiffs' requests for admissions. Every evidentiary reference has been read and considered. (Shelkofsky did not see the collisions between the Probe and the truck, or between the Probe and the Explorer.)

### Summary Judgment Law

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P.56. In making that assessment, the court

---

[3]The court has considered the entire court file, including the transcript of the November 30, 2001 oral argument before the magistrate judge.

must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

<u>Plaintiff's Expert</u>

At oral argument, Shelkofsky referred often to his expert's reports as evidence creating material issues of fact. The defendants objected on the ground that the expert's reports are not summary judgment evidence. The defendants are correct. The reports

are just that, reports. It is only the expert's depositional statements, and only those actually presented to the court, which constitute summary judgment evidence in this case, and, therefore, nothing in the expert's reports, whether the original report of February 15, 2000 or the report of August 19, 2001, will be considered.[4]

As to the defendants' motions to strike the August 1, 2000 report as untimely, a ruling on this motion is necessary only if Shelkofsky survives the defendants' motions for summary judgment.[5]

### Summary Judgment Evidence

*Sanders Sees the Truck, Checks Traffic and Changes Lanes*

The evidence shows the following. Karen Sanders was driving eastbound on Highway 82, in the outside lane. According to Billy Colburn, the driver of the Tahoe, the speed limit was fifty-five or sixty miles per hour. Karen testified that she saw the

---

[4] Of course, the purpose of the report of the expert is to apprise the opposing party of anticipated expert testimony. Thus, the opposing party has an opportunity to determine, based on the contents of the report, whether he wants to depose the expert and/or obtain his own expert.

[5] The defendants point out that the deadline for the plaintiffs to file expert reports was August 1, 2000. Sparks was deposed by the defendants on January 17, 2001.

Okolona truck a "great distance ahead of her." *Karen Sanders Deposition*, pg. 25. She also stated that the truck was "two blocks, or, you know, two short blocks" away. *Id.* at 29. Karen further testified that the truck was stopped in a convenience store parking lot, with its blinker on, as if its driver were waiting to get onto the highway.

Wofford testified that he had pulled his truck into the convenience store parking area, made a purchase or two, got back into his truck and moved back toward the highway, where he came to a stop five to eight feet away from the edge of the road. Billy Colburn testified that the truck was eight feet off the highway and not moving. Karen stated that it appeared to her that the truck was not moving. The plaintiffs' accident reconstruction expert, Fred Sparks, testified that he had no information indicating that the truck was on the highway when the accidents occurred.

Karen testified that, as a courtesy to the truck, she wanted to change from the outside lane to the inside lane. Before changing lanes, she checked her mirrors, and turned her head as well, to determine if it was safe to make that lane change:

> [The truck] had its left blinker on like it wanted to merge onto the road. Well, I looked in my left-hand mirror. I always turn and look. And in my rear-view mirror, I was clear to get over into the left-hand lane. I was doing this as a courtesy, if the truck wanted to come onto the road, because I was clear. Behind me, very far behind me, which was only a speck, there was a car. And that's all I know. And I got into the left-hand lane.

*Karen Sanders' Deposition*, pg. 25. She also testified:

> Q. Now, did you do that in your left mirror?
> A. I turned around to look. I always turn to the side, especially it seemed in an Explorer, a lot of times you may have a - - you do have a blind spot. So I always turn to make sure there's not a car right beside me.
> Q. But you looked in the left mirror to see the speck and you turned and saw the speck?
> A. Exactly. I put my - -
> Q. Did you look in the right mirror is what I was asking?
> A. In the right mirror? No, no.
> Q. Can you see through the rear-view mirror? Could you see on that day in your Explorer?
> A. Yes.
> Q. Did you use that mirror?
> A. Yes.
> Q What did you see?
> A. When I was in the left-hand lane, when I moved over.
> Q. As you were clearing to make your left turn, did you use the rear-view mirror?
> A. I probably just used my right-hand mirror and I turned.

*Id.* at 30-31.


*When Karen Saw Bates' Probe / Probe Coming Up Too Fast*

At the time Karen changed lanes, there were two other vehicles behind her. One was Bates' Probe, and the other was the Tahoe belonging to Billy and Caprice Colburn. Karen testified that while she was "clearing," she saw a speck "very far behind." Karen put on her blinker and changed lanes. She stated what ensued:

> A. I just happened to - - I was just going - - it was probably two or three seconds, and I just happened to look in my rear-view mirror, which I do from time to time, and I saw a car coming behind me and it looked to me to be a small blue car. And I could tell at that point that it was coming up very rapidly behind

-7-

> me. And I turned to - - I mean, I didn't turn. I just said, Fred, my God, that car is flying. And that- - that was it.
> Q.   So it's Fred, my God, that car is flying?
> A.   Right.
> Q.   Now, you have been present during the testimony of Mr. Billy Colburn. Did you ever see a Tahoe vehicle?
> A.   No, I did not.
> Q.   So you never saw this in the right lane or anything?
> A.   I did not see it.
> Q.   Did you ever see it behind you?
> A.   No.
> Q.   Never saw it in the rear-view mirror?
> A.   No. All I saw was the blue car coming very fast.
> Q.   The speck and then the blue car moving fast?
> A.   Right.
> Q.   With regard to the Tahoe, you never saw it in the left mirror, rear-view mirror, left side mirror, the right side mirror, the rear-view mirror or in the clearing?
> A.   No, I didn't see a Tahoe that I recall at all.

*Karen Sanders' Deposition*, pps. 31-33.

As Billy Colburn completed or almost completed merging onto Highway 82, he testified that his Tahoe was between the Sanders' Explorer and Bates' Probe. Colburn also testified to Bates' excessive speed:

> And I had just got on 82. I looked in my rear-view mirror. I'm a truck driver and I look in my rear-view mirror all the time. I told my wife, I said, there's fixing to be a wreck. And I just told her that. And she said, why. And I said, this guy is running too fast behind me and just - - - I pulled over. And when I pulled over, he shot around us. I was probably running fifty-five, sixty mile an hour, because I was, you know, merging onto 82. And he come around us. And these people right here was in front of us.

*Billy Colburn Deposition,* pg. 24. Colburn's wife, Caprice, testified to what she saw after Billy said that something was going to happen: "And so I raise up and I started looking around. And I mean, it wasn't ten seconds, this little purple flash. And he realized --- this little purple flash --- realized that he was not going to be able to stop before he hit a Ford Explorer." *Caprice Colburn Deposition,* pg. 15. She also testified that the Bates' car took "a very hard pull to the right, and you could tell he was standing on the brakes." *Id.* at 54. She also said:

> A.  I saw the little purple car moving very fast, but he still had not got even with us, and I turned back around.
> Q.  Okay. So he was moving fast, but he hadn't gotten even with you. Does that mean he was in the inside lane?
> A.  He was in the inside lane and was not even with us yet.
> Q.  All right. And then you turned back. Now, after you turned back, which way are you looking?
> A.  I was looking at the back end of the Ford Explorer.

*Id.* at 28. In her opinion, the Probe was traveling at least sixty-five to seventy miles per hour.

Defendant Wofford, the driver of the Okolona truck, testified that he saw Karen move from the outside lane into the inside lane. He also testified to the Probe's excessive speed, which he estimated at seventy to seventy-five miles per hour. Wofford stated that when Karen moved into the left lane, the Probe came out from behind her and swerved into the right lane. According to Wofford, Bates could have avoided what can only be

characterized as evasive action; that is, turning sharply to the right in order not to hit the Explorer: "You know, he just --- he could have had time to slow up because the Ford was --- when it moved over, it was a good distance in front of him. He had some time to slow up." *Wofford Deposition*, pg. 66.

*The Collisions*

Wofford states that Bates lost control of the Probe when he had to "straighten [it] back up," after "whooping" from the left lane into the right lane in order to avoid hitting the Explorer. He further testified that the Probe then turned sideways, slid down the road, hit the tractor's rear tire, bounced back, and hit the Explorer, turning it over.

Caprice stated that Bates' Probe was skidding and her husband said "[Bates] lost it." *Caprice Colburn Deposition*, pg. 54. Caprice also testified:

> And in order to keep from running into the back of the Explorer, he jerked real hard over to this right. And there wasn't that much room anyway as fast as he was going. He hit the dirt, sped, hit a tire, and then came back in front of the Explorer, hit the Explorer and the Explorer flipped. The little car kept going down a hill, come over here in this lane, and it ended up at the next intersection. And the Explorer landed upside down.

*Id.* at 15. Billy Colburn testified: "And I said, he ain't going to make. And he didn't. He snatched the car. And when it did, it come up - - - it almost come up on two wheels. You

could see one of the wheels lift on one side." *Billy Colburn Deposition*, pg. 24. Billy further stated:

> [Bates] was going to hit them in the rear end. And he saw he couldn't make it, so he jerked the car. When he jerked the car, he got up on almost airborne and got sideways and went off the road, hit a transfer truck parked on the side of the road. And you could see dust fly, like he "blowed" a tire out or something like that maybe on the truck or on the car. And then he shot back across the rod and hit the Explorer in the side and they went off down in the median.

*Id.* at 34.

After Karen Sanders saw the Probe "flying" toward her, she testified to what followed:

> I tighten[ed] on the steering wheel. I didn't know if he was going to hit me. I didn't know what would happen at that point. If he was just going to continue to speed toward me or slow down, I didn't know. I did - - you automatically tighten, and I remember tightening on the steering wheel. And then there was impact. . . .

*Karen Sanders Deposition*, p 35. When Karen was asked whether she applied her brakes after her Explorer was struck, she stated: "I would - - I can't say for sure. I would - - you would think - - I would think I did. But it was so fast, that it was - - we were rolling before I had time to." *Id.* at 36. She had been "trying to just hold it." *Id.* at 49.

*Wofford's Testimony and Angle of Truck to the Highway*

Wofford stated that he was in the truck at the time Bates hit him. Mr. and Mrs. Colburn stated that they saw Wofford walking up to the cab. Billy Colburn testified that he saw Wofford "like he was walking up to get on his thing before [Bates] started sliding," and that Wofford got in the truck about a second before the wreck. *Billy Colburn Deposition*, pg. 88. Caprice testified that she saw Wofford sitting in the truck.

Billy Colburn testified that "the tractor was looking almost perpendicular with the trailer, but it was bowed just a little bit." *Billy Colburn Deposition*, pg. 102. Sanders said it was parallel to the road. When it was stated to Karen that a tractor moves independently of the trailer, and she was asked if the tractor trailer was at an angle, Karen answered that it was so far away all she could see was the back of the truck. She also stated that the truck was "straight away with the road." *Karen Sanders Deposition*, pg. 27. Wofford stated that his cab was at a slight angle to the highway, and that angle allowed him to see the traffic out his cab window.

The plaintiff's expert testified that he had a problem with Wofford's account of what happened, because in the expert's opinion it would have been difficult, if not impossible, for Wofford to have been able to see out his window if his cab was facing forward.

Discussion

*Sanders Defendants*

Shelkofsky contends that Karen Sanders contributed to Bates' hitting the Okolona truck by improperly making her "courtesy" change from the outside lane to the inside lane. Shelkofsky also contends that Karen did not apply her brakes so as to avoid Bates' hitting her, and that she did not maintain control of her vehicle after she was hit so as to avoid hitting the Shelkofsky vehicle.

The evidence shows, without contradiction, that Karen Sanders changed lanes only after she checked to make sure she could do so safely. Although it is noted that Karen, after testifying first that she used the rear and left-hand mirrors, stated that she used only the right-hand mirror, it is clear that she used her mirrors before making the lane change. Regardless of which mirrors she used in conjunction with turning her head to check traffic, she testified that she *saw* the "speck," the "small blue car." What she saw could have been only the Probe. Certainly, she did not mistake the large Tahoe for the "speck," the "small blue car." Also, the Colburns' testimony shows that the Tahoe was between the Sanders' Explorer and Bates' Probe. The fact that the Probe appeared only as a "speck" indicates that there was ample room between the Explorer and the Probe for

Sanders to change lanes safely. Wofford also testified that there was a "good distance" between the Probe and Explorer when Karen changed lanes. It is also uncontroverted that the Probe was traveling at an excessive rate of speed. Further, there is no evidence that Karen had changed back to the outside lane when Bates hit her, as the plaintiffs state might have happened, or that she acted in any way improperly from the time she changed from the outside lane to the inside lane until the time her vehicle struck Shelkofsky's Volvo.

With respect to the plaintiffs' efforts to call into question Spark's testimony as to what he witnessed, Wofford testified that he brought his truck to a stop at an angle to the road. The testimony of the other witnesses concerning the position of the truck to the road is not contradictory. Moreover, even if Wofford's testimony were discounted, there is still sufficient, uncontradicted evidence that Karen Sanders was not at fault in changing from the outside to the inside lane.[6]

---

[6] Since Karen is not liable to the plaintiffs, it is unnecessary to comment on the plaintiffs' claim that Mr. Sanders is liable as the owner of the vehicle who was present when the collisions occurred.

It is noted that in his brief Shelkofsky contends that the Explorer should be considered a commercial vehicle because Mr. and Mrs. Sanders were en route to look at a bed and breakfast. If it mattered, which it does not, the Explorer cannot be considered a commercial vehicle.

Thus, there is insufficient evidence for the claims against the Sanders to go forward, and their motion for summary judgment is due to be granted.

*Wofford and Okolona Trucking*

There is likewise insufficient evidence to allow the claims against Wofford to proceed. Shelkofsky contends that Wofford should have used flashers and warning devices which disabled vehicles are required to use. This contention makes no sense. The truck was not disabled. After leaving the convenience store, Wofford had merely driven toward and stopped his truck five to ten feet from the highway, where he then looked out his window to determine when it was safe to enter the highway.[7] Even the plaintiffs' expert could not testify that Wofford had done anything improperly.

There is no evidence that Wofford did something he should not have done or did not do something he should have done which contributed to the Sanders' collision with the Volvo.

---

[7] Even if Wofford had left his truck alongside the road while he went into the convenience store, regulations concerning the use of flashers or warning devices would not have applied in this situation. The truck was not disabled, and, in any event, any warning devises or flashers would have been picked up when Wofford was ready to get back on the highway.

*Conclusion*

All of the material summary judgment evidence supports dismissal of the claims against the remaining defendants. Wherefore, Joy Shelkofsky is due to be dismissed from this action, with prejudice, on her own motion; plaintiffs Morris and Daniel Shelkofsky's motion for summary judgment is due to be denied; the defendants' motions for summary judgment are due to be granted and the claims against them dismissed; and the motion to strike the plaintiffs' August 19, 2001 expert's report is due to be declared moot. An order in accordance with this memorandum opinion will be entered.

DONE this 28th day of Decemb, 2001.

_____
William M. Acker, Jr.
United States District Judge